UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STANG,<br><br>   Plaintiff,<br><br> v.<br><br>TEAL DRONES, INC., et al.,<br><br>   Defendants. | Case No. 22-cv-01586-TLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 61 |

On April 7, 2023, Plaintiff Robert Stang ("Plaintiff") filed a second amended complaint against Defendant Benjamin Lambert ("Defendant"), among other defendants, alleging the following three causes of action against Defendant: (1) unjust enrichment, (2) conversion, and (3) breach of fiduciary duty.  Pl. ['s] Am. Compl., ECF No. 60.

Before the Court now is Defendant's motion to dismiss Plaintiff's second amended complaint as to Defendant only under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Def. ['s] Mot. to Dismiss ("Mot."), ECF No. 61.

In its discretion, the Court finds this motion suitable for determination without oral argument.  Civ. L.R. 7-1(b).  Accordingly, the hearing set for August 8, 2023, is **VACATED**.  Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss.

**I. BACKGROUND**

Plaintiff is an individual residing in San Francisco, California.  Am. Compl. ¶ 3.  Defendant is an individual residing in Salt Lake County, Utah.  *Id.* ¶ 6.  Plaintiff alleges that on or around November 23, 2015, he entered into a written restricted stock purchase agreement ("RSP Agreement") with iDrone, Inc., "an early-stage company…that designed and manufactured remote-controlled drones and accessories."  *Id.* ¶¶ 1, 14-16.  Under the terms of the RSP

Agreement, Plaintiff agreed to provide a business plan and invest cash and intellectual property in iDrone, Inc. in exchange for 150,000 shares of common stock. *Id.* ¶¶ 1, 14-16. Approximately one month after Plaintiff entered into the RSP Agreement, Defendant became a board member of iDrone, Inc., and Defendant controlled the investments received by iDrone, Inc. *Id.* ¶ 22.

Over the next several years, Teal Drones, Inc.[1] grew into a successful company, in part, because of Plaintiff's business plan and intellectual property. Am. Compl. ¶ 25. Because of this growth, Teal Drones, Inc. attracted interest from other companies for potential acquisition, including interest from Defendant Red Cat Holdings, Inc. *Id.* ¶ 26. On or around July 13, 2021, Defendant Red Cat Holdings, Inc. acquired Teal Drones, Inc. and purchased all of its "outstanding common and preferred stock for equity valued at $14,000,000, plus up to $30,000,000 in additional incentive payments over the next 24 months." *Id.* ¶ 2. In connection with this acquisition, Plaintiff alleges that Defendant wrongfully converted Plaintiff's 150,000 shares of Teal Drones, Inc. stock and kept the approximately $1,000,000 to $5,000,000 in value received from Defendant Red Cat Holdings, Inc. for his shares. *Id.* ¶¶ 2, 27.

Plaintiff further contends that at the time of the acquisition, Defendant "abused his role as a member of the board of directors of [Teal Drones, Inc.] to enter into [the] self-interested transaction that increased the value of [Defendant's] shares, while reducing the value of Plaintiff's shares." *Id.* ¶ 28. According to Plaintiff, by leveraging his power as a majority shareholder, Defendant "unilaterally decided to move forward with the acquisition of [Teal Drones, Inc.] for his own sole benefit, knowing that the acquisition would reduce the equity of other shareholders (and [Defendant] would wrongfully absorb their equity)," including Plaintiff's equity. *Id.*

Plaintiff claims Defendant then "absconded" with the proceeds from the sale of Plaintiff's common shares, and Defendant has refused to provide Plaintiff with any return for the allegedly converted shares or equivalent equity in Defendant Red Cat Holdings, Inc. Am. Compl. ¶ 61.

---

[1] On or around October 5, 2016, iDrone, Inc. filed a request with the Utah Secretary of State to change the name of the corporation to Teal Drones, Inc. The Secretary of State granted the name change request. According to Plaintiff, the name change did not affect the corporate shareholder structure or any of Plaintiff's rights under the RSP Agreement. Am. Compl. ¶ 23.

2

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Unjust Enrichment

Defendant first argues that Plaintiff's unjust enrichment claim fails for the following two reasons: First, according to Defendant, Plaintiff "cannot recover on a quasi-contract unjust enrichment claim because he alleges the existence of an enforceable written agreement," namely the RSP Agreement, which covers the same subject matter as his unjust enrichment claim. Mot. 9. Second, Defendant argues that even if Plaintiff could pursue both a breach of contract claim and a quasi-contract claim for unjust enrichment based on a benefit conferred under the RSP Agreement, Plaintiff has failed to plausibly allege an unjust enrichment claim. *Id.* at 11-12.

In response, Plaintiff argues that he has not asserted a breach of contract claim against Defendant, which makes his unjust enrichment claim "necessary and appropriate." Pl. ['s] Opp'n to Mot. 4 ("Opp'n"), ECF No. 68. Specifically, Plaintiff argues that his amended complaint no

1    longer asserts a breach of contract claim against Defendant, and in any event, Defendant concedes
2    he is not a party to the RSP Agreement. *Id.* (citing Mot. 12).  Thus, Plaintiff argues his claim is
3    necessary to recover from Defendant's unjust enrichment in selling Plaintiff's shares, and Plaintiff
4    does not assert any contract that covers the relationship between Defendant and himself. *Id.* at 4.

5    In California, "there is not a standalone cause of action for 'unjust enrichment,' which is
6    synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.
7    2015) (citations omitted).  However, "when a plaintiff alleges unjust enrichment, a court may
8    construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford
9    Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  "The doctrine applies where
10   plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant
11   which defendant has knowingly accepted under circumstances that make it inequitable for the
12   defendant to retain the benefit without paying for its value." *Letizia v. Facebook Inc.*, 267 F.
13   Supp. 3d 1235, 1253 (N.D. Cal. 2017).  To plead a quasi-contract claim, a plaintiff must allege
14   "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's
15   expense." *Id.* (citing *Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1593 (2008)).  "The term
16   'benefit' 'denotes any form of advantage.'" *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996).

17   Here, Plaintiff's second amended complaint does not assert a breach of contract claim
18   against Defendant, and Plaintiff does not argue that there is any binding contract between them.
19   *See Rutherford Holdings,* 223 Cal. App. 4th at 231 ("[A]n action based on an implied-in-fact or
20   quasi-contract cannot lie where there exists *between the parties* a valid express contract covering
21   the same subject matter.") (emphasis added).  Rather, Plaintiff's unjust enrichment claim seeks to
22   find liability against Defendant on some other non-contractual claim, namely restitution for
23   Defendant's alleged unjust enrichment.  *See, e.g., Jordan v. Wonderful Citrus Packing LLC*, No.
24   1:18-cv-00401-AWI-SAB, 2018 WL 4350080, at *3-4 (E.D. Cal. Sept. 10, 2018) ("Quasi-contract
25   in California is a claim for relief that seeks restitution based on the defendant's unjust
26   enrichment.").  For example, Plaintiff alleges that Defendant received a benefit from Plaintiff by
27   orchestrating the acquisition of Teal Drones, Inc. without compensating Plaintiff.  Am. Compl. ¶¶
28   9, 24, 27.  Plaintiff further alleges that Defendant, along with the other defendants in this action,

1   received valuable consideration for the 150,000 shares of common stock "they stole form
2   Plaintiff," and they unjustly retained the money they received at Plaintiff's expense. *Id.* ¶ 27, 29.
3   In other words, Plaintiff alleges that Defendant unjustly retained the proceeds of the sale of his
4   common stock, and Plaintiff now seeks restitution from Defendant for the allegedly converted
5   shares. *See e.g., ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1039 (9th Cir.
6   2016) (holding that plaintiff's complaint sufficiently alleged that defendants received and unjustly
7   retained $350,000 at plaintiff's expense when defendants received nearly $3 million from plaintiff,
8   defendants promised to hold the deposit in a client trust account, defendants promised the funds
9   would be refundable, and defendants paid themselves $350,000 with those funds).

At the pleading stage, a court may construe an unjust enrichment claim as a quasi-contract claim seeking restitution. *See Astiana*, 783 F.3d at 762; *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (noting that independent claims for unjust enrichment may proceed). Because the parties agree that no enforceable contract exits between Plaintiff and Defendant, specifically, the Court finds that Plaintiff's allegations are sufficient to plausibly state a quasi-contract, unjust enrichment claim. *See, e.g., Sloan v. Gen. Motors LLC*, No. 16CV-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020) ("A plaintiff may recover for unjust enrichment only where there is no contractual relationship between the parties.").

Accordingly, the Court hereby **DENIES** Defendant's motion to dismiss Plaintiff's unjust enrichment claim as to Defendant Benjamin Lambert only.

### B.   Conversion

Defendant Benjamin Lambert ("Defendant") next argues that Plaintiff has failed to plausibly allege a claim for conversion against Defendant because Plaintiff's second amended complaint "does not include any well-pled, nonconclusory factual content that would allow the court to draw a reasonable inference that [Defendant] wrongfully exercised dominion" over Plaintiff's common stock or that Defendant "wrongfully dispossessed [Plaintiff] of those shares in a manner inconsistent with [Plaintiff]'s property rights." Mot. 13-14. In response, Plaintiff argues that he has plausibly alleged he had a right to ownership and possession of his 150,000 common shares and that Defendant "personally participated in the scheme to sell [Plaintiff]'s shares to

5

[Defendant Red Cat Holdings, Inc.] without notice, and provide[d] no value in return to [Plaintiff]." Opp'n 7 (citing Am. Compl. ¶ 29). Plaintiff further alleges that Defendant, as a director and majority shareholder of Teal Drones, Inc., orchestrated the acquisition of Teal Drones, Inc. Am. Compl. ¶¶ 6, 9, 24, 27.

In California, "conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007) ("The basic elements of the tort [of conversion] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages."). A director of a corporation is immune from torts committed by the corporation "unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." *Frances T. v. Green Owners Assoc.*, 42 Cal. 3d 490, 508 (1986).

Here, the Court finds that Plaintiff's second amended complaint sufficiently alleges facts to allow the Court to draw the reasonable inference that Defendant authorized, directed, or actively participated in the conversion of Plaintiff's property. For example, Plaintiff alleges that Defendant was a director and one of the main investors of Teal Drones, Inc. during the acquisition of Teal Drones, Inc. by Defendant Red Cat Holdings, Inc. Am. Compl. ¶¶ 6, 9, 24, 27. As the director who "controlled the investments to be received" by Teal Drones, Inc., Defendant allegedly orchestrated the acquisition of Teal Drones, Inc. and "abused his role as a member of the board of directors of [Teal Drones, Inc.] to enter into a self-interested transaction that increased the value of [Defendant]'s shares—while reducing the value of [Plaintiff]'s shares—leaving Plaintiff "with nothing to represent his former equity" in Teal Drones, Inc. *Id.* ¶¶ 6, 9, 22, 24, 27-28.

In sum, Plaintiff alleges that (1) he contributed a business plan, cash, and intellectual property in exchange for 150,000 shares of common stock, *id.* ¶¶ 1, 14-16, (2) Defendant allegedly leveraged his position as a director and majority shareholder of Teal Drones, Inc. to orchestrate the acquisition of Teal Drones, Inc. by Defendant Red Cat Holdings, Inc. without compensating Plaintiff for the value of his shares, *id.* ¶¶ 9, 22, 24, 28, and (3) Plaintiff's 150,000 shares that were

6

allegedly "stolen" are worth approximately $1,000,000 to $5,000,000. *Id.* ¶ 2, 27.

At the pleading stage, well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Because Plaintiff has alleged that (1) he had ownership of his 150,000 shares of common stock, (2) Defendant abused his role as the director who "controlled the investments to be received" by Teal Drones, Inc. to wrongfully disposes Plaintiff of his property right, and (3) Plaintiff suffered approximately 1,000,000 to $5,000,000 in damages, the Court finds that Plaintiff has alleged sufficient facts to support a cognizable legal theory for alleged conversion.

Accordingly, the Court hereby **DENIES** Defendant's motion to dismiss Plaintiff's conversion claim as to Defendant Benjamin Lambert only.

### C.     Breach of Fiduciary Duty – Breach of the Duty of Loyalty

Finally, Defendant moves to dismiss Plaintiff's claim for alleged breach of the duty of loyalty. Mot. 18-22. "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. Nov. 1, 1993).[2] When a breach of the duty of loyalty claim focuses on the conduct of a single director, to rebut the presumption of the business judgment rule, a plaintiff "must adequately allege that (i) the director was 'materially self-interested' in a transaction, (ii) the director failed to disclose his 'interest in the transaction to the board,' and (iii) 'a reasonable board member would have regarded the existence of [the director's] material interest as a significant fact in the evaluation of the proposed transaction.'" *City of Fort Myers Gen. Emples. Pension Fund v. Haley*, 235 A.3d 702, 717 (Del. 2020) (quoting *Cinerama, Inc. v. Technicolor*, 663 A.2d 1134, 1138 (Del. Ch. 1994) *aff'd*, 663 A.2d 1156 (Del. 1995)). "Absent such a showing, the mere presence of a conflicted director or an act of disloyalty by a director, does not deprive the board of the business judgment rule's presumption of loyalty." *Id.*

In his motion, Defendant argues that Plaintiff's claim fails, in part, because it relies on an

---

[2] Both parties agree that Delaware law governs Plaintiff's breach of fiduciary duty claim. *See* Mot. 19; Opp'n 9 n.1.

7

incorrect assumption about the nature of Defendant's duty of loyalty.  Mot. 18.  Specifically, Defendant argues that the duty of loyalty does not require directors to obtain the consent of a minority shareholder to a merger transaction before approving such a merger transaction.  *Id.* at 19 (citing Del. Code tit. 8, § 251(c)).  In his opposition to Defendant's motion, Plaintiff argues that Defendant breached his duty of loyalty by entering into a personally enriching merger transaction.  Opp'n 8.  Plaintiff further argues that as the majority shareholder of a small corporation with only a few shareholders, Defendant had a duty to protect the interests of not only Teal Drones, Inc., but also the interest of all of its shareholders, and Defendant breached that duty.  *Id.* at 9.

In its previous order granting Defendant's motion to dismiss Plaintiff's breach of the duty of loyalty claim with leave to amend, the Court explained that Plaintiff had "failed to plausibly allege a critical element in establishing a claim for an alleged breach of the duty of loyalty, namely that Defendant was 'materially self-interested' in the merger."  *See* Order, ECF No. 59.  Under Delaware law, "[m]ateriality means that the alleged benefit was significant enough 'in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the … shareholders without being influenced by her overriding personal interest.'"  *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (quoting *In re Gen. Motors Class H Shareholders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999)).

Here, the Court finds that Plaintiff, again, fails to plausibly establish that Defendant was materially self-interested to successfully rebut the presumption of the business judgment rule.  As Plaintiff concedes in his opposition, a "shareholder challenging a board decision has the burden of providing evidence that directors, in reaching their challenged decision, breached any of their duties."  Opp'n 9.  Nevertheless, Plaintiff alleges that his second amended complaint adequately demonstrates that the acquisition of Teal Drones, Inc. deprived him of the value of his shares, without notice.  *Id.*  Put differently, Plaintiff argues that Defendant was materially self-interested in the acquisition of Teal Drones, Inc. because Defendant was one of the main investors in Teal Drones, Inc., and he stood to gain the most from the transaction.  *Id*.

Establishing that a director "expect[s] to derive [a] personal financial benefit from [a transaction]," *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), does not, without more, establish

1 that a director is interested—the benefit must be material. *Cinerama, Inc.*, 663 A.2d at 1167.
2 Besides Plaintiffs allegations that Defendant stood to gain the most from the acquisition of Teal
3 Drones, Inc. because he was a majority shareholder, Plaintiff has not alleged additional fact in his
4 second amended complaint to plausibly establish that Defendant was *materially* interested in the
5 acquisition of Teal Drones, Inc. Nevertheless, even if Plaintiff had plausibly alleged that
6 Defendant was materially self-interested in the acquisition of Teal Drones, Inc., Plaintiff has failed
7 to allege that Defendant failed to disclose his "interest in the transaction to the board" to
8 successfully rebut the presumption of the business judgment rule. *See City of Fort Myers*, 235
9 A.3d at 717. In fact, Plaintiff concedes in his second amended complaint that Defendant "was
10 listed as an 'interested party' in the transactions" involving Teal Drones, Inc. Am. Compl. ¶ 24;
11 *see also Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("'[A] plaintiff may
12 plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on
13 his…claim.") (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).
14 Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's breach of the
15 duty of loyalty claim as to Defendant Benjamin Lambert only and without further leave amend.

## IV. CONCLUSION

For the above reasons, the Court hereby **GRANTS** in part and **DENIES** in part
Defendant's motion to dismiss.

This Order terminates docket number 61.

**IT IS SO ORDERED.**

Dated: July 26, 2023

TRINA L. THOMPSON
United States District Judge

9